flection, I think he should be temporarily prohibited from disposing of the stock. The railroad company will, if any payments be hereafter assessed upon the shares, have a security upon them under the 16th section of the charter; and, whether this will prove to be the only security for the assessments or not, it should be retained for the present, at least. But no other interlocutory relief can be granted.

GIBSON (PROUT v.). See Case No. 11,445.

## Case No. 5,399.

### GIBSON v. RICHARDS.

[Cited in Forbes v. Barstow Stove Co., Case No. 4.923. Nowhere reported; opinion not now accessible.]

## Case No. 5,400.

### GIBSON v. RICHARDS.

[See Case No. 5,399.]

GIBSON (ROSS v.). See Case No. 12,074.

## Case No. 5,400a.

### GIBSON et al. v. SCULL.

[Hempst. 36.] [1]

Superior Court, Territory of Arkansas. April, 1826.

ATTACHMENT — PLEADING WITHOUT SPECIAL BAIL.

Defendants in attachment may appear and plead without entering special bail to the action, and then the property attached is considered as a substitute for bail.

In error to Arkansas circuit court.

[This was an action at law by Hewes Scull against James M. Gibson and John P. Brown.]

Before JOHNSON and SCOTT, Judges.

OPINION OF THE COURT. The only question which we have to consider is whether Gibson and Brown, the defendants in the court below, had the right to appear there and plead to the attachment, without first filing special bail to the action. We have no doubt this right is given to defendants in all cases upon attachment. The act of 1823 (Acts [Ark.] 1823, p. 6) provides "that in all cases upon attachment, the defendant may appear and plead the same as in other cases, provided that when such defendant does not enter into special bail as is now prescribed by law, the property shall be and remain in the hands of the sheriff until the final determination of the suit." From the provisions of the above act we think it clear that defendants in attachment may in all cases appear and plead without giving bail, and that

[1] [Reported by Samuel H. Hempstead, Esq.]

the property attached by the sheriff is considered as a substitute for bail. We are, therefore, of opinion that the court erred in refusing to hear the defendants unless they filed special bail to the action. Reversed.

## Case No. 5,401.

### GIBSON v. STEVENS.

[3 McLean, 551.] [1]

Circuit Court, D. Indiana. May Term, 1845.[2]

INDEBITATUS ASSUMPSIT — WHEN IT WILL LIE.— FRAUD—TROVER.—WAREHOUSE RECEIPT —LIEN—ATTACHMENT.

1. Money fraudulently obtained from a bank may be sued for before the note given to the bank, for the same, becomes due.

2. A forged note to the bank is no payment, and the bank may sue for the money advanced by it.

3. An action of trover for the bank notes, or for the property purchased with them, would have been the proper action. But, in such a case an action of indebitatus assumpsit will lie.

4. A suit for the original consideration, disregarding the fraudulent note, is not, in fact, an affirmance of the contract.

5. A receipt by the warehouse man for property to be forwarded to order and of payment, when assigned to a commission merchant, who makes an advance, does not create a lien on the property, paramount to that of an attachment laid before notice of the assignment.

[See note at end of case.]

6. The money advanced, not being equal to the value of the property, leaves an attachable interest, beyond the lien, if it exist, of the commission merchant.

7. On the attachment all the creditors may come in, under the Indiana statute.

[This was an action of replevin by Edmund J. H. Gibson against Bradford B. Stevens.]

Judah & Baird, for plaintiff.

Morrison & Mason, for defendant.

OPINION OF THE COURT. This cause is submitted to the court, on facts agreed, substantially as follows: M'Queen and M'Kay, of Detroit, Michigan, about the 20th of March, 1844, by false pretences fraudulently procured the bank at Indianapolis, to loan to them the sum of about $11,000 in notes of the bank, payable to bearer. With part of this money M'Queen and M'Kay purchased of Hanna, Hamilton & Co. 350 barrels of mess pork, for the sum of $2,908.50, and received from them the following memorandum: "Fort Wayne, April 4th, 1844. Messrs. M'Queen & M'Kay, bought of Hanna, Hamilton & Co. 350 bbls. mess pork, to be delivered on board of canal boats soon after the opening of canal navigation. Received payment in full. Hanna, Hamilton & Co. We guaranty the inspection of the above pork at Toledo, and the delivery on board of canal boats at this place, (Fort Wayne,) soon after the opening of canal navi-

[1] [Reported by Hon. John McLean, Circuit Justice.]

[2] [Reversed in 8 How. (49 U. S.) 384.]